**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>WORTH GROUP INC., ANDREW WILSHIRE, and EUGENIA MILDNER,<br><br>Defendants. | ) | **Case No. 13-cv-80796-KLR**<br><br>**Hon. Kenneth L. Ryskamp** |

**CONSENT ORDER OF PRELIMINARY INJUNCTION AND OTHER ANCILLARY RELIEF**

On August 13, 2013, Plaintiff United States Commodity Futures Trading Commission ("Plaintiff," "CFTC," or "Commission") filed a complaint against Worth Group Inc. ("Worth" or "the Company"), Andrew Wilshire ("Wilshire"), and Eugenia Mildner ("Mildner") seeking injunctive and other equitable relief for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1 *et seq.* (2012), and the Commission Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 et seq. (2013). On August 14, 2013, Plaintiff filed a Motion for an Order of Preliminary Injunction. (Dkt. No. 9, "Motion.") The parties have agreed to resolve the Motion. Defendants Worth, Wilshire, and Mildner consent to the entry of this Order without admitting the allegations of the CFTC's Complaint for the purposes of this Consent Order for Preliminary Injunction and Other Ancillary Relief ("Order"), except as to the Court's subject-matter and personal jurisdiction and venue, which they admit, while expressly reserving the right to contest any violation of the Act alleged by the Plaintiff. Nothing in this Order is intended to cause a waiver of any argument or defense any party has or may have, including any already raised in

any pleading. Defendants state that their consent is voluntary and that no promise or threat has been made by the CFTC or any member, officer, agent, or representative thereof, to induce them to consent to this Order.

**THE PARTIES AGREE AND THE COURT FINDS THAT:**

1. Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order thereunder.

2. Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Defendants transact business in this District and certain transactions, acts, practices, and business alleged in this Complaint occurred, are occurring, and/or are about to occur within this District.

3. The parties waive the entry of findings of fact and conclusions of law for the purposes of this Order pursuant to Rule 52 of the Federal Rules of Civil Procedure.

4. As more fully detailed in this Order, a Corporate Monitor is appointed to: (1) evaluate the adequacy of the amount of physical metals that Worth holds for its customers; (2) perform an assessment of Worth's current procedures and practices for actual delivery of precious metals to its retail customers and its documentation and recordkeeping related to such delivery; and (3) monitor Worth's expenditures and perform an assessment of Worth's ability to be legally compliant under the Act on an ongoing basis.

5. The provisions of this Order shall be binding on Defendants, upon any person insofar as he or she is acting in the capacity of officer, agent, servant, employee or attorney of Defendants, and upon any person who receives actual notice of this Order by personal service or

otherwise, including Federal Express or other commercial overnight service, email or facsimile, insofar as he or she is acting in active concert or participation with Defendants.

6. Plaintiff enters into this agreement without prejudice to its ability to later request additional preliminary injunctive relief, including but not limited to the forms of relief initially requested in the Motion and proposed order thereon. (*See* Dkt. No. 9, 9-1.) The Defendants enter into this agreement without prejudice to any of their ability to oppose such request for additional injunctive relief.

## I. DEFINITIONS

For the purposes of this Order, the following definitions apply:

7. "Assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, including but not limited to chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, receivables, lines of credit, contracts, insurance policies, and all cash, wherever located.

8. "Document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes, but is not limited to, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

## II. INJUNCTIVE RELIEF GRANTED UPON CONSENT OF THE PARTIES

As of the date of the entry of this Order, it is hereby **ORDERED AND ADJUDGED** that:

10. Defendants are restrained, enjoined and prohibited, until further order of the Court, from directly or indirectly:

A. Engaging in conduct in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012) and Regulation 180.1, 17 C.F.R. § 180.1 (2013), by directly or indirectly, in connection with any contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, intentionally or recklessly representing that Worth purchases and stores or causes to be stored physical precious metals for or on behalf of customers without doing so, or charging customers storage fees if Worth does not actually store physical metals or cause such metals to be stored for customers.

B. Engaging in conduct in violation of Section 4(a), 7 U.S.C. § 6(a) (2012), of the Act by offering to enter into, entering into, executing, confirming the execution of, or conducting any office or business anywhere in the United States, its territories or possessions, for the purpose of soliciting or accepting any order for, or otherwise dealing in, any transaction in, or in connection with a contract for the purchase or sale of a commodity for future delivery, including any agreement, contract, or transaction in any commodity that is entered into with, or offered to (even if not entered into with), a person that is not an eligible contract participant or eligible commercial entity and where such agreement, contract or transaction is entered into, or offered (even if not entered into), on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis, if such agreement, contract or transaction does not meet the exceptions described in Section 2(c)(2)(D)(ii) of the Act.

C. Engaging in conduct in violation of Section 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A) and (C) (2012) by intentionally or recklessly representing to customers purchasing metals on a financed basis that Worth delivers physical metals in the full amount of their financed purchase within 28 days of purchase without doing so, in connection with any agreement, contract, or transaction in any commodity that is entered into with, or offered to (even if not entered into with), a person that is not an eligible contract participant or eligible commercial entity and where such agreement, contract or transaction is entered into, or offered (even if not entered into), on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis, and such agreement, contract or transaction does not meet the exceptions described in Section 2(c)(2)(D)(ii) of the Act.

11. As of the date of the entry of this Order, Defendants are further restrained, enjoined and prohibited, until further order of the Court, from directly or indirectly:

A. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended, 7 U.S.C. § 1a (2012));

B. Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3 (hh), 17 C.F.R. § 1.3(hh) (2013)) ("commodity options"), security futures products, foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i) (2012)) ("forex contracts"), and/or swaps (as that term is defined in Section 1a(47) of the Act, 7 U.S.C. § 1a(47) (2012), and as further defined by Regulation 1.3(xxx), 17 C.F.R. § 1.3(xxx) (2013)) ("swaps") for their own personal account or for any account in which they have a direct or indirect interest;

C. Having any commodity futures, options on commodity futures, commodity options, security futures products, forex contracts, and/or swaps traded on their behalf;

D. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, forex contracts, and/or swaps;

E. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, forex contracts, and/or swaps;

F. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2013); and/or

G. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2013)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)) registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2013).

It is further hereby **ORDERED AND ADJUDGED** that:

12. Subject to the provisions of paragraph 13, Defendants shall provide the Corporate Monitor with access to all records of Defendants held by financial institutions located within or outside the territorial United States.

13. Until further order of this Court, any firm, bank, financial or brokerage institution, futures commission merchant, corporation, partnership, association or other person or entity which holds, controls, or maintains custody of any funds, securities, assets or other property of any kind that are owned, controlled, managed, or held by, in the name of, or for the direct or indirect benefit of Defendants, and who receives notice of this Order by personal service or otherwise, including Federal Express or other commercial overnight service, email or facsimile, shall provide the Corporate Monitor with information and records reasonably related to implementation of this Order, including producing records related to Defendants' accounts and Defendants' businesses, *provided, however*, that, prior to making any request for records pursuant to this paragraph, the Corporate Monitor shall first attempt to obtain any such records from the website of any entity possessing such records using the access information such as passwords or PIN numbers provided by any Defendant, or by having any Defendant authorize that such information be provided to the email or business address of the Corporate Monitor. Nothing in this paragraph shall be construed as a waiver or limitation of the Corporate Monitor's authority to directly contact any entity or institution and seek information and records if, in his or her discretion, the Corporate Monitor determines that such contact is necessary to obtain such information and records or verify the accuracy of information or records provided by the Defendant or it is otherwise appropriate to obtain such information and records.

14. Defendants and their agents, servants, employees, successors, assigns, attorneys and all persons insofar as they are acting in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, including Federal Express or other commercial overnight service, email or facsimile, are restrained and enjoined from directly or indirectly destroying, mutilating, concealing, altering or disposing of, in any manner, any of the books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of Defendants wherever located, including all such records concerning Defendants' business operations.

15. Defendants shall permit the Corporate Monitor and the Plaintiff to immediately inspect the books, records and other electronically stored data, tape recordings, and other documents of Defendants, and to make and retain copies of said documents, data, and records either on or off the premises where they may be situated. Defendants shall be entitled to object to such inspection and copying on the grounds of the attorney-client privilege, applicable work-product protections and related doctrines with respect to materials prepared in anticipation of litigation ("privilege claims"), and shall, in the event any materials are withheld from inspection based upon such claims, provide a log of materials so withheld to the Corporate Monitor and the Plaintiff.

16. In the performance of the Corporate Monitor's duties outlined in this Consent Order, the Corporate Monitor shall at all times use his or her best efforts to avoid disruptions to Worth's normal and lawful business activities, avoid incurring unnecessary costs and, when dealing with third parties, maintain the confidentiality of Worth's proprietary business information. Likewise, the Plaintiff shall also use best efforts to avoid such disruptions when inspecting Defendants' books and records.

17. Upon entry of this Order, the Plaintiff may conduct discovery under the Federal Rules of Civil Procedure of persons or entities other than the Defendants, their agents or their retained experts and consultants under the Federal Rules of Civil Procedure. Moreover, nothing herein is intended to limit any of the parties' rights to discovery under the Federal Rules of Civil Procedure.

It is further hereby **ORDERED AND ADJUDGED** that:

18. Each Defendant shall prepare, subscribe under oath and submit to the Monitor and CFTC, by two weeks from the date of this order, a complete and accurate accounting for the period of July 1, 2011 to the date of such accounting, which shall be no earlier than the date of this Order. Such accounting shall include, without limitation, the identification of:

A. All banks, futures commission merchants ("FCMs"), financial or brokerage institutions, including account numbers, which hold or have held funds, securities, commodity interests, assets, liabilities, and other property currently owned or controlled (legally, equitably or otherwise) directly or indirectly by Defendants, whether individually or jointly;

B. All funds, securities, commodity interests, assets, liabilities, and other property currently owned or controlled (legally, equitably or otherwise) directly or indirectly by Defendants, whether individually or jointly;

C. All funds, securities, commodity interests, assets and other property received directly or indirectly by Defendants, describing the source, amount, disposition, and current location of each listed item;

D. All funds, securities, commodity interests, assets and other property transferred or otherwise disposed of directly or indirectly by the Defendants, describing the source, amount, disposition, and current location of each listed item, including accounts or assets of Defendants held by any bank, FCM, financial or brokerage institutions located inside and/or outside the territorial United States;

E. All investors or customers of Defendants, including name, address, telephone number and email, account number, deposit and withdrawal dates and amounts; and

F. The names and last known addresses of each bailee, debtor or other person or entity currently holding any funds, securities, commodity interests, assets or other

property owned or controlled (legally, equitably or otherwise) by Defendants, whether individually or jointly.

As to Worth, the accounting should also include a chronological schedule of all receipts and disbursements, except for those petty cash transactions of less than $1000. In addition, any non-business transaction shall be specially designated as such and its purpose described. As to each Defendant, the accounting shall be provided in an electronic format such as Quicken, Excel, or other accounting or electronic format spreadsheet. In addition, the Defendants shall supply true and accurate copies of any balance sheets, income statements, statements of cash flow, or statements of ownership equity previously prepared for Defendants' business(es).

19. Each Defendant is further ordered to identify and provide an accounting within two weeks to the Corporate Monitor and Plaintiff for all their assets and property that are currently maintained outside the United States, including but not limited to all funds on deposit in any bank, futures commission merchant, financial or brokerage institution, including but not limited to funds, securities and assets held by, under the control of, or in the name of each Defendant, whether jointly, individually or otherwise.

20. It is further ordered that Defendants shall, if directed by the Corporate Monitor, immediately take all steps within their power to repatriate all funds, securities, assets and other property held by, under the control of, or in the name of the Defendants, whether individually or jointly, outside the United States, including but not limited to all funds on deposit in any firms, banks, financial or brokerage institutions, futures commissions merchants, or other financial institutions, by transferring them as directed by the Corporate Monitor, for further disposition in this case.

## III. BOND NOT REQUIRED OF PLAINTIFF

It is further hereby **ORDERED AND ADJUDGED** that:

21. Pursuant to Section 6c(b) of the Act, 7 U.S.C. § 13a-1(b) (2012), no bond need be posted by Plaintiff CFTC, which is an agency of the United States of America.

## IV. APPOINTMENT AND AUTHORITY OF THE CORPORATE MONITOR

It is further hereby **ORDERED AND ADJUDGED** that:

22. Melanie Damian, Esq. is appointed Corporate Monitor.

### A. Powers of the Corporate Monitor

23. Consistent with other provisions in this Order regarding his or her powers and duties, the Corporate Monitor is further directed and authorized to accomplish the following:

A. Use reasonable efforts, consistent with the provisions in paragraph 13, to determine the nature, location, and value of all of Worth's property interests, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights, and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which Worth owns, possesses, has a beneficial interest in, or control directly or indirectly;

B. Determine the size of Worth's physical precious metals delivery obligations to its customers, and determine whether Worth holds adequate physical precious metals for all of its customers;

C. Perform an assessment of Worth's current practices and procedures for actual delivery of precious metals to its customers, including whether Defendants are effectively, reliably, and timely delivering physical precious metals to Worth's customers, and including an assessment of Defendants' documentation and recordkeeping related to such delivery;

D. Perform an assessment of Worth's ability to be legally compliant under the Act on an ongoing basis;

E. Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Corporate Monitor deems advisable or necessary in the performance of his or her duties and responsibilities with due regard to costs upon obtaining leave of this Court with notice to Defendants and thereafter, only upon further order of this Court; and

F. Advise the Court on notice to the parties, should it be determined that additional Corporate Monitor powers or a freeze of Defendants' assets is necessary to protect the interests of Defendants' customers.

24. Within seven (7) days of the entry of this Order, the Corporate Monitor shall report to the parties as to what actions he or she proposes to undertake to fulfill his or her duties as Corporate Monitor.

**B. Access of Corporate Monitor**

25. Immediately upon service of this Order upon them, Defendants and any other person or entity served with a copy of this order shall, immediately or within such time as permitted by the Corporate Monitor in writing, provide the Corporate Monitor with:

A. Access to all documents of Defendants, including, but not limited to, all books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

B. All non-residential keys, computer passwords, entry codes, PIN numbers and combinations to locks necessary to gain or to secure access to any of Defendants' documents or information, including but not limited to, access to business premises, means of communication, accounts, computer systems, or other property; and

C. Information identifying the accounts, employees, properties or other assets or obligations of Defendants.

**C. Cooperation with Corporate Monitor**

26. Defendants, their agents and representatives, and all other persons or entities served with a copy of this Order shall cooperate fully with and assist the Corporate Monitor in the performance of the Corporate Monitor's duties. This cooperation and assistance shall include, but not be limited to, providing any information to the Corporate Monitor that the Corporate Monitor deems necessary to exercising the authority and discharging the

responsibilities of the Corporate Monitor under this Order, including but not limited to all paper and electronic information of and/or relating to Worth and/or its property.

27. Worth's officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers, and general and limited partners, and other appropriate persons or entities shall answer to the Corporate Monitor all questions which the Corporate Monitor may put to them and produce all documents as required by the Corporate Monitor regarding Worth's business, or any other matter relevant to Worth's operation or administration or the collection of funds due to Worth. It is within the Corporate Monitor's discretion to determine whether this information shall be provided under oath.

**D. Injunction Against Interference**

28. Defendants and all persons receiving notice of this Order by personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken that would hinder, obstruct, or otherwise interfere with the Corporate Monitor in the performance of his or her duties, including but not limited to by concealing, destroying or altering records or information, by interfering with or harassing the Corporate Monitor, or by interfering in any manner with the exclusive jurisdiction of this Court over Worth.

29. The Corporate Monitor shall promptly notify the Court and CFTC counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

**E. Expenditures**

30. Except as otherwise provided in this Order, absent prior written authorization from the Corporate Monitor, Worth shall not directly or indirectly transfer, set off, change, sell,

pledge, assign, liquidate, withdraw, or dispose of any assets for the purpose of making any payment to any Worth owner, shareholder, principal, officer, or director.

31. Except as otherwise provided in this paragraph, absent prior written authorization from the Corporate Monitor, Worth shall not directly or indirectly transfer, set off, change, sell, pledge, assign, liquidate, withdraw, or dispose of any assets in excess of $10,000 in value for any transaction for any purpose other than making a payment to a Worth customer or purchasing or shipping metal to meet delivery obligations to its customers, which includes payments for such services to Diamond State Depository, Transcontinental Depository, G4S and the Brink's Company or their designated affiliates. With respect to any salary, draws, and/or consulting fees to Andrew Wilshire, Finite Consulting, Mildner Consulting and Malcolmson Management, such payments are limited to $10,000 per month per individual/entity. However, at any time, Worth may request the Corporate Monitor to authorize increased payments for these individuals and entities, and the Corporate Monitor shall have made a determination on any such request by Worth within the latter of sixty days of the date of this Order or fifteen days of the date of any such request. Moreover, at all times during the term of the Corporate Monitor, the Corporate Monitor retains the authority to authorize increased payments and, if appropriate, request Court approval of any salary, draws, and or consulting fees paid by Worth. With respect to services provided by Dixon Consulting, Worth may make monthly payments not to exceed $12,500 without prior written authorization from the Corporate Monitor. Defendants are prohibited from structuring or breaking up their financial transactions in an effort to evade this restriction. The Corporate Monitor shall report any potential violation of this provision to the CFTC and to the Court with notice to Defendants. Worth need not seek prior written authorization for payment of Defendants' own reasonable attorney's fees and litigation support fees (including fees incurred

by FTI Consulting, Inc., Etera Consulting and/or National Economic Research Associates, Inc. in connection with this matter), however, the Corporate Monitor has the right to review the amount of those fees (in the form of client billing records redacted to protect attorney-client, work product and any other applicable privileges) and object to those that he or she believes to be made for the purpose of improperly transferring or dissipating assets of Worth.

**F. Corporate Monitor's Report to the Court and Compensation**

32. Upon his or her appointment, the Corporate Monitor shall perform the assessments and analyses previously detailed in paragraph 23 above. The Corporate Monitor's analysis shall include an examination of whether, under Worth's current business model, delivery of precious metals is made to customers, and if so, when delivery takes place relative to the time of the customer transactions. The analysis of whether actual delivery has been made shall look beyond the language used in relevant contracts to examine questions of ownership, possession, title, and physical location of the commodity purchased or sold, both before and after execution of the agreement, contract, or transaction, including all related documentation; the nature of the relationship between the buyer, seller, and possessor of the commodity purchased or sold; and the manner in which the purchase or sale is recorded or completed. The Corporate Monitor's analysis shall also examine the nature of all security interests related to the metals in customer accounts (whether held by Worth or a third party), and how those security interests affect or potentially affect the customer ownership of or title to the metals they have purchased. In conducting the analyses, in an effort to minimize costs, the Corporate Monitor may use any existing data and analyses that he or she deems relevant and reliable.

33. Within 30 days of the entry date of this Order, the Corporate Monitor shall file with the Court and serve on the parties a report of his or her conclusions and recommendations. Unless discharged or otherwise ordered, every 90 days following submission of the

aforementioned conclusions and recommendations, the Corporate Monitor shall file a report with the Court evaluating the adequacy of the amount of physical metals that Worth holds for its customers, and assessing Worth's ability to comply with the Act on an ongoing basis. In the event of any changes to Worth's procedures and practices for actual delivery of precious metals to its retail customers since the time of the Corporate Monitor's previous report, this report shall also assess those practices and procedures as well as Worth's related documentation and recordkeeping practices.

34. The parties may move the Court pursuant to this Order for a hearing on any of the Corporate Monitor's conclusions or recommendations, to request that the Corporate Monitor assume additional responsibilities, or to request that the Court discharge the Corporate Monitor of his or her duties.

35. The Corporate Monitor and all personnel hired by the Corporate Monitor as herein authorized, including counsel to the Corporate Monitor, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them for those services authorized by this Order. The Corporate Monitor and all personnel hired by the Corporate Monitor shall be compensated solely out of Worth's funds unless such funds are inadequate to fully compensate, in which case the remainder of compensation shall come from the funds of the other Defendants. In any case, the Corporate Monitor shall not be entitled to any compensation from the CFTC or the Court. The compensation of the Corporate Monitor and all personnel hired by the Corporate Monitor shall, upon Court approval as detailed below, be entitled to priority as administrative expenses. The Corporate Monitor shall file with the Court for its approval and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no

more than 30 days after the date of this Order and any subsequent requests filed every 90 days thereafter as necessary. The requests for compensation shall itemize the time and nature of services rendered by the Corporate Monitor and all personnel hired by the Corporate Monitor. The Corporate Monitor shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court. All parties have the right to object to compensation and costs requested by the Corporate Monitor.

**G. Limitation of Corporate Monitor's Liability**

36. The Corporate Monitor and all persons hired by Corporate Monitor are entitled to rely on all outstanding rules of law and Court orders and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment or decree. In no event shall the Corporate Monitor or persons hired by Corporate Monitor be liable to anyone (1) with respect to the performance of their duties and responsibilities as Corporate Monitor or persons hired by Corporate Monitor, or (2) for any actions taken or omitted by them, except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties. Nothing in this provision is intended to provide a defense against liability for any actions taken by the Defendants or their personnel prior to the appointment of the Corporate Monitor.

**H. Preservation of Rights and Privileges**

37. Nothing in this Order shall be construed to require that any Defendant abandon or waive any constitutional or legal privilege that they may have available to them.

**I. No Bond**

38. The Corporate Monitor is appointed without bond.

## V. STAY

39. The following proceedings, excluding the instant proceeding, all police or

regulatory actions and actions of the Commission related to the above-captioned enforcement action, and the *Bates v. WorldPMX, Inc.* matter currently pending in this district court (Case No. 13-cv-61138-WJZ) are stayed until further Order of this Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Corporate Monitor, in his or her capacity as Corporate Monitor; (b) any Worth property, wherever located; (c) Worth, including subsidiaries, partnerships, and entities owned or controlled by Worth; or, (d) any of Worth's past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

40. The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

41. All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. Further, as to a cause of action accrued or accruing in favor of Worth against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

## VI. SERVICE OF THE ORDER

It is further hereby **ORDERED AND AJUDGED** that:

42. Copies of this Order may be served by any means, including by way of personal service, Federal Express or other commercial overnight service, email or facsimile, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of Defendants or that may be subject to any provision of this Order: David Chu, Elizabeth Pendleton, Melissa Glasbrenner, and William Janulis, all representatives of the

Plaintiff, are hereby specially appointed to serve process, and/or effectuate service of process, including this Order and all other papers in this cause.

## VII. SERVICE ON THE COMMISSION

It is further hereby **ORDERED AND ADJUDGED** that:

43. Defendants shall serve all pleadings, correspondence, notices required by this Order, and other materials on the Plaintiff Commission by delivering a copy to David Chu, Senior Trial Attorney; Elizabeth Pendleton, Senior Trial Attorney, William Janulis, Chief Trial Attorney; and/or Rosemary Hollinger, Deputy Director; Division of Enforcement, Commodity Futures Trading Commission, 525 W. Monroe, Suite 1100, Chicago, Illinois 60661.

## VIII. COURT MAINTAINS JURISDICTION

44. **IT IS FURTHER ORDERED** that this Preliminary Injunction shall remain in full force and effect during the pendency of this case, or until further order of this Court, upon application, notice and an opportunity to be heard, and that this Court retains jurisdiction of this matter for all purposes related to this action.

**IT IS SO ORDERED.**

Signed at 9:00 o'clock am/~~pm~~ on the 23 day of January, 2014

[signature]

UNITED STATES DISTRICT JUDGE
Kenneth L. Ryskamp

**CONSENTED TO AND APPROVED BY:**

Worth Group, Inc.,
Andrew Wilshire, and
Eugenia Mildner,
Defendants

By: /s/ Edward Marod
Edward Marod
One of the Attorneys for all Defendants
Gunster Yoakley & Stewart, P.A.777 South
Flagler Drive
Suite 500 East
West Palm Beach, Florida 33401
(561) 655-1980
emarod@gunster.com

Dated: January 14, 2014

By: /s/ Matthew I. Menchel
Matthew I. Menchel
One of the Attorneys for Andrew Wilshire and
Eugenia Mildner
Kobre & Kim, LLP
2 South Biscayne Boulevard
35th Floor
Miami, FL 33131
(305) 967-6108
matthew.menchel@kobrekim.com

Dated: January 14, 2014

U.S. Commodity Futures Trading
Commission,
Plaintiff

By: /s/ Theodore Z. Polley III
Theodore Z. Polley III
One of the Attorneys for Plaintiff
525 W. Monroe St., #1100
Chicago, IL 60661
(312) 596-9608
tpolley@cftc.gov

Dated: January 14, 2014

By: /s/ David Chu
David Chu
One of the Attorneys for Plaintiff
525 W. Monroe St., #1100
Chicago, IL 60661
(312) 596-0642
dchu@cftc.gov

Dated: January 14, 2014