UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| U. S. COMMODITY FUTURES TRADING COMMISSION, | |
| Plaintiff, | Civil Action No. 13-cv-80796-KLR |
| vs. | Hon. Kenneth L. Ryskamp |
| WORTH GROUP INC., ANDREW WILSHIRE, and EUGENIA MILDNER, | Mag. Judge James M. Hopkins |
| | ** FILED UNDER SEAL ** |
| Defendants. | |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

U.S. Commodity Futures Trading Commission

Elizabeth N. Pendleton
David Chu
Brigitte Weyls
Rosemary Hollinger
525 West Monroe Street, Ste. 1100
Chicago, IL  60661
Ph:  (312) 596-0700
Fax: (312) 596-0714

## I.  INTRODUCTION

The Defendants' request for summary judgment fails because Defendants do not provide any evidentiary basis for this Court to find that they did not misrepresent the fundamental nature of fully-paid transactions, engage in illegal off-exchange financed transactions and fail to register with the CFTC as a futures commission merchant ("FCM") as charged in the Complaint.  Instead, Defendants admit a number of critical facts that support the entry of judgment in the CFTC's favor as to Counts I, II and IV.  Specifically, as to Count I, Defendants do not dispute that: (1) they made representations that they would deliver physical metal to fully-paid customers; (2) these representations were false, as Defendants did not deliver any physical metal, but instead put on unallocated, spot forward positions ("unallocated positions") in their own account; and (3) they failed to disclose the fundamental nature of the fully-paid transactions, including in the Account Agreement ("Agreement") that governed all of Worth's transactions for nearly two years, and misrepresented that Worth delivered metal when it did not.  With respect to Count II, Defendants do not provide evidence of actual delivery of financed transactions to support their claimed exception, namely that Worth's financed transactions resulted in actual delivery within 28 days.  Finally, there is no dispute that Worth failed to register as a FCM with the CFTC as charged in Count IV.  As set forth below and in the CFTC's Motion for Partial Summary Judgment, the record before this Court establishes that Defendants violated Sections 4(a), 4d, and 6(c) of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 6(a),6d, 9(1) (2012), and Commission Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2014).  Therefore, this Court should deny Defendants' Motion for Summary Judgment ("Defs.' MSJ") and grant Plaintiff's Motion for Partial Summary Judgment ("Pl.'s MSJ") as to Counts I, II and IV.

Defendants' request for summary judgment on Count III, charging Defendants with fraudulent misrepresentations to financed customers in violation of Section 4b of the Act, 7 U.S.C. § 6b,  should also be denied as there are genuine issues of material fact regarding materiality and scienter.  There is evidence that Defendants knowingly or recklessly misrepresented in the Agreement that they would deliver within 28 days for their financed transactions, failed to timely deliver for a significant percentage of their transactions and concealed this failure, and that this misrepresentation denied investors the knowledge of the fundamental nature of their investment, namely that the transactions were illegal.

**II.     LEGAL STANDARD**

Summary judgment is appropriate when the movant shows that there is no genuine issue of material fact and is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmovant then bears the burden to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). A scintilla of evidence is not enough; there must be evidence where a jury could reasonably find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Where the nonmovant bears the burden of proof on an issue at trial, the movant meets its summary judgment burden by "pointing out" the insufficiency of the evidence on that issue. *Celotex*, 477 U.S. at 325. If the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to [the nonmovant's] case, and on which that party will bear the burden of proof at trial," summary judgment is mandated. *Id.* at 322.

**III.    LEGAL ARGUMENT**

    **A. The Commission Is Entitled to Summary Judgment on Count One, Violation of Section 6(c)(1) of the Act and Regulation 180.1**

The facts establishing Defendants' liability on Count I, charging fraudulent misrepresentations and omissions in connection with fully-paid transactions in violation of Section 6(c) of the Act and Regulation 180.1, are undisputed.[1] Defendants admit that: (1) Worth did not purchase actual physical metal for fully-paid customers, but instead used unallocated positions in Worth's own account (Defendants' Statement of Undisputed Material Facts ("DSF") ¶¶ 10, 12, 15; Plaintiff's Statement of Material Facts ("SMF") ¶¶ 12, 15); (2) Worth asked its counsel to prepare the Agreement, and, at least from July 16, 2011 through December 2012,

---

[1] A violation of Section 6(c)(1) of the Act and Regulation 180.1 requires: (1) material misrepresentations or omissions, (2) made with scienter, and (3) made in connection with a contract of sale of a commodity in interstate commerce. *See, e.g. CFTC v. Hunter Wise*, 21 F. Supp. 3d 1317, 1347 (S.D. Fla. 2013). In their Motion, Defendants cite the standard for a finding of fraud in violation of Section 4b(a)(2) of the Act as articulated by the Eleventh Circuit in *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002), cert. denied, 543 U.S. 1023 (2004), which also requires that misrepresentations or omissions be material and made with scienter, but does not require that the misrepresentations be made in connection with a contract of sale of a commodity in interstate commerce. Defs.' MSJ at 4. Defendants do not contest the materiality of the charged misrepresentations and omissions, nor do they assert that fully-paid transactions did not involve commodities in interstate commerce. Therefore, only the scienter element is at issue.

Worth used the Agreement for all customer transactions (DSF ¶¶12-15); and (3) the Agreement states that, upon receipt of funds for the full purchase price, Worth delivers metal to the customer, its agent, or a depository used by Worth for the purpose of safekeeping precious metals, and further states that metals purchased in London will be held according to the "allocation rules of the LBMA." DSF ¶¶ 12, Defs.' MSJ Ex. 14; SMF ¶ 10. In an effort to avoid liability for their admitted misrepresentations, Defendants ask this Court to find as a matter of law that they are not liable for conduct that presented a clear and obvious danger of misleading customers because they relied on the advice of their former counsel, John Giovannone ("Giovannone"). Defs.' MSJ at 9-11. As discussed below and in the Commission's Motion, Defendants cannot establish the required elements of an advice of counsel defense – namely that they "fully disclosed all material facts" to Giovannone and "relied in good faith" on his advice. *See, e.g.*, *U.S. v. Condon,* 132 F.3d 653, 656 (11th Cir. 1998).[2] Therefore, this Court should deny Defendants' Motion and enter judgment as a matter of law in favor of the Commission on Count I.

### 1. *Defendants Have Not Raised a Viable Advice of Counsel Defense*

Defendants suggest that the sole predicate for the fraud charge is that the Agreement "failed to clarify that Worth covered fully-paid customer obligations with unallocated, spot-deferred positions." Defs.' MSJ at 9. This is incorrect. Not only does the Agreement omit any disclosure of Worth's use of allocated positions, but it also misrepresents that Worth would deliver precious metals upon full payment and that metal held in London (*i.e.*, purchased from Baird, Worth's primary supplier) was held according to LBMA allocation rules, meaning that customers had full title to metal held in their names. DSF ¶¶ 4, 12, Defs' Ex. 14 (DE 154-14); SMF ¶¶ 10-11. In other words, the Agreement represents that fully paid customers had metal when they had none. In addition, Defendants also misrepresented the fundamental nature of fully-paid investments on Worth's website and in customer statements and commodity title transfer notices informing retail customers of metal purchases, and charged customers storage fees for "metal" that customers had not actually acquired. SMF ¶¶ 6, 15; *see also* Compl. (DE 1) ¶¶ 7, 31, 36, 63, 85. Therefore, even if this Court were to find that Defendants relied in good

---

[2] In addition to complete disclosure and good faith reliance, courts have also required defendants invoking an advice of counsel defense to show that they sought advice as to the legality of certain conduct and timely received advice that the conduct was legal. *See, e.g.*, *SEC v. Martino*, 255 F. Supp. 2d 268, 284-85 (S.D.N.Y. 2003).

faith on a specific instruction from Giovannone to use the Agreement for fully-paid transactions – which it should not – that does not resolve Defendants' culpability for the remaining violations of 6(c) of the Act and Regulation 180.1.

In their Motion, Defendants do not cite any case law supporting the application of the advice of counsel defense here, but rather rely on decisions recognizing the general availability of such defense. Defs.' MSJ at 9-10. For example, Defendants cite *CFTC v. McCrudden*, No. 10-cv-5567, 2013 U.S. Dist. LEXIS 4637, at *12-15 (E.D.N.Y. Jan. 11, 2013), an unpublished decision denying a motion to dismiss based on reliance on counsel and recognizing that, to avail himself of that defense, the defendant must proffer evidence sufficient to establish each element of the defense.[3]

Further, even if the Court credits all of Defendants' factual assertions, as it must at this stage, the record still does not support judgment in their favor. Defendants seek to establish full disclosure, the first necessary element of their defense, by generally asserting that Giovannone was "fully aware" of Worth's use of unallocated positions and Wilshire "specifically requested that Giovannone assist Worth in becoming compliant." Defs.' MSJ at 10. This is insufficient to show complete disclosure. *See* CFTC MSJ at 8. Moreover, the record also includes Wilshire's contradictory admission that Giovannone's advice regarding compliance [Redacted (Original Filed Under Seal)] SMF ¶¶ 16, 29; *See also* CFTC Response to DSF ¶ 8 (citing testimony from Giovannone's former colleague that the only advice Giovannone provided regarding fully-paid transactions prior to

---

[3] Defendants also cite two cases granting summary judgment on the basis that there was no genuine dispute as to the materiality of the alleged misrepresentations. *See Matthews v. Centext Telemanagement*, No. C-921837, 1994 U.S. Dist. LEXIS 7895, at *6-20 (N.D. Cal. June 9, 1994) (granting judgment in favor of defendant on plaintiff's 10b-5 claim due to insufficient evidence of any misstatement or omission and a lack of materiality and noting that "plaintiffs have shown no more than a difference in business judgment exercised by the defendants . . . [who] conferred with and relied in good faith on their outside auditor"); *Newton v. Uniwest Fin. Corp.*, 802 F. Supp. 361, 366-68 (D. Nev. 1990) (finding summary judgment appropriate as plaintiff failed to present any evidence contradicting affidavit of accountant stating that periodic filings accurately reflected assets and loans during the applicable time periods, and noting that plaintiff also failed to present evidence contradicting defendants' assertion that he relied on lawyers and accountant in preparing forms).

4

December 2012 was for Worth to deliver within 28 days – advice that Worth apparently ignored).

As to the second prong, Defendants first seek to establish good faith reliance by citing the "system of delivery and allocation" used in connection with financed transactions. Defs.' MSJ at 10. This simply has no bearing on the fully-paid transactions, especially as Worth's purchase of unallocated positions at Baird began at least three years before Worth retained Giovannone, and Giovannone did not have any involvement in that aspect of Worth's business. *See* DSF ¶¶ 4, 6, 11; SMF ¶¶ 8, 16. Defendants also argue that they had no reason to hide their use of unallocated positions to cover obligations to fully-paid customers as it "was legal [pre Dodd-Frank] and is legal now." Defs.' MSJ at 9. Defendants' assertion that concealing the fundamental nature of an investment is "legal" not only reflects a fundamental misunderstanding of the law, but also suggests that they may lack the "honesty and good faith" necessary to negate scienter. *U.S. v. Erickson*, 601 F.2d 296, 305 (7th Cir. 1979), cert. denied, 444 U.S. 979 (1979).

Next, Defendants suggest their good faith is illustrated by remedial measures, namely that, purportedly, "[t]he moment the error was discovered they quickly corrected it." Defs.' MSJ at 10. Defendants omit that they discovered this error not through their own due diligence, but rather through plaintiff CFTC. The Commission informed defense counsel of its position that Worth's fully-paid transactions violated Section 6(c) of the Act during an October 31, 2012 meeting, and Defendants received formal notice of the proposed charge through the November 26, 2012 Wells notice. DSF ¶ 16; CFTC Response to DSF ¶ 16. Approximately one month later, on December 26, 2012, Giovannone circulated a draft account agreement stating that Worth "may cover the purchase with offsetting cash forward or other contractors with one or more of its suppliers until physical delivery is required." DSF ¶ 17.[4] There is no indication that Worth actually used that Agreement. Even more troubling, there is no indication Defendants ceased issuing statements and commodity title transfer notices to fully-paid customers representing that it had delivered metals to them when it had not, or changed the language on Worth's website stating that customers who purchased bullion received "hard assets". SMF ¶¶ 6, 15. Further, by Defendants' own admission, it was not until April 2013 – approximately six months after

---

[4] One could reasonably question if Wilshire actually reviewed the draft, as he did not realize the language from the PDFA discussing Worth's use of unallocated positions to cover fully-paid transactions was missing from the Agreement until approximately April 2013. SMF ¶ 17.

5

Defendants first learned of the potential fraud charge resulting from their misrepresentations to fully-paid customers – that Worth purchased sufficient precious metals to cover all of its obligations. DSF ¶ 16; Russo Dec. (DE 154-21) ¶ 7.

### 2. Defendants' Review of the Agreement Precludes Any Reliance on Counsel's Advice

Defendants' own review of the Agreement and sworn statements in the Wells response precludes their reliance on Giovannone's advice. Courts are "unsympathetic" to purported reliance on the advice of counsel where, as here, defendants read and signed documents containing material misrepresentations. *In re Mitchell*, 496 B.R. 625, 639 (Bankr. N.D. Fla. 2013). Wilshire and Mildner controlled virtually every aspect of Worth's business and had ultimate responsibility for Worth's operations, including customers relations, negotiations with suppliers, agreements with customers and suppliers, and purchases of unallocated positions. DSF ¶¶ 6, 9-10; SMF ¶ 2-4, 12-14, 21-24. Prior to July 16, 2011, Wilshire and Mildner reviewed the Agreement on numerous occasions and, at least as to Wilshire, for at least three to four hours per the instructions of their counsel, Giovannone. SMF ¶ 9. They continued to periodically review the Agreement throughout 2011 and 2012, but nevertheless remained unaware that they key provision disclosing the true nature of purchases made by fully-paid customers had not been included in the Agreement. DSF ¶ 16; SMF ¶¶ 10, 17.

Defendants provide no basis for this Court to find their purported good faith reliance on counsel justifies the failure to notice the missing provision, which must have been obvious even to a layperson. It is undisputed that the PDFA stated, in relevant part:

> 7: TITLE OF PRODUCT ON CREDIT LINE PURCHASES: Title of products purchased on credit terms will be passed on to the CUSTOMER only upon full satisfaction of obligation by the CUSTOMER. Same shall be evidenced by WORTH BULLION GROUP'S statement to the customer.
>
> . . . . CUSTOMER acknowledges that WORTH BULLION GROUP may cover its obligation of product and provision of credit to the CUSTOMER either through WORTH BULLION GROUP'S own inventory, cash forward, bank loans or loans from other financial institutions, or other sources deemed appropriate by WORTH BULLION GROUP.

DSF ¶¶ 9-10; Defs.' MSJ Ex. 12 (DE 154-12); and CFTC MSJ Ex. 3 § VIII(7). In contrast, the Agreement contains the following provision governing "Delivery" to the Retail or Customer:

> Upon receipt of the required amount of good funds from [Customer or Retailer] of the full purchase price for the purchase of precious metals, Worth shall, as agreed, either deliver the precious metals (i) to [Customer or Retailer], (ii) to [Customer or

6

> Retailer]'s appointed agent or designee, or, (iii) for the benefit of [Customer or Retailer] to a depository used by Worth for the purpose of safekeeping precious metals . . . . If precious metals are purchased for the [Customer or Retailer] in London, they will be allocated to the [Customer or Retailer] by a member of the London Bullion Market Association ("LBMA") and may be held in the United Kingdom according to the allocation rules of the LBMA.

DSF ¶ 12-13; Defs.' MSJ Ex. 14; and CFTC MSJ Exs. 8, 9 at § 7.3.  One provision clearly states that Worth may use cash forwards, while the other provision clearly states that precious metals will be delivered to the customer, without exception.  The differences between these two provisions are evident and "would not take a lawyer's advice to comprehend".  *SEC v. E-Smart Techs. Inc.*, No. 11-895, 2014 U.S. Dist. LEXIS 163405, at *35 (D.D.C. Nov. 21, 2014).  An advice of counsel defense will not stand where, as here, "one would expect [a company's officer] to verify the agreement's most basic details" and be able to recognize statements that are "unquestionably misleading".  *Id.* at *35 (granting summary judgment in favor of SEC on charged violations of Section 10b-5).[5]

### B. The Commission Is Entitled to Summary Judgment on Count Two, Violation of Section 4(a) of the Act

There is no genuine dispute that Defendants violated Section 4(a) of the Act, 7 U.S.C. § 6(a), by engaging in illegal, off-exchange retail commodity transactions.  To establish a violation of Section 4(a) of the Act, the Commission must show that Defendants engaged in commodity transactions that were: (1) financed; (2) with retail customers; and (3) off exchange.  7 U.S.C. §§ 2(c)(2)(D)(i), 6(a).  The Commission bears the burden of proof to establish each of these elements.  *See, e.g.*, *Baker v. Firestone Tire & Rubber Co.*,

---

[5] Defendants' sworn Wells Response – submitted to the CFTC by Defendants Wilshire and Mildner under penalties of perjury – also precludes their asserted good faith reliance.  It falsely states that Worth "clearly informs retailers, in connection with fully-paid-for purchases of metals, that Worth may cover the retailers' corresponding purchases from Worth with cash forward positions" and that "Worth never concealed from customers its practice of covering fully-paid-for transactions with cash forwards." SMF ¶ 26.  Presumably, Defendants neither reviewed the Agreement nor consulted with Russo, the individual delegated primary responsibility for communicating with retailers, who at the time was unaware that Worth used unallocated positions, before executing the Wells Response.  *See* SMF ¶ 19.  Regardless, this Court should find that reliance on the advice of counsel is "no defense" as Defendants "cannot, merely by playing ostrich and burying their heads deeply enough in the sand, disclaim all responsibility for statements which they had made under oath." *In re Mitchell*, 496 B.R. at 639 (quoting *In re Tully*, 818 F.2d 106, 111 (1st Cir. 1987)).

793 F.2d 1196, 1199 (11th Cir. 1986). There is no question that Defendants engaged in off-exchange financed precious metals transactions with retail customers. Pl.'s MSJ at 9-10. Thus, the Commission has met its burden of proof.

Defendants claim that their financed transactions are excepted under the Act because they resulted in actual delivery within 28 days.[6] *See, e.g.*, DE 82 at 21; 7 U.S.C. § 2(c)(2)(D)(ii)(III)(aa) (outlining actual delivery exception). Because Defendants claim an exception to the Act, they bear the burden of proof to demonstrate the elements of the exception. *United States v. First City Nat'l Bank of Houston*, 386 U.S. 2 361, 366 (1967) ("First is the question whether the burden of proof is on the defendant banks to establish that an anticompetitive merger is within the exception of 12 U.S.C. s 1828(c)(5)(B) or whether it is on the Government. We think it plain that the banks carry the burden. That is the general rule where one claims the benefits of an exception to the prohibition of a statute."); *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948) ("[T]he burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on the one who claims its benefits . . . ."); *Schlemmer v. Buffalo, Rochester, & Pittsburg Railway Co.*, 205 U.S. 1, 10 (1907) ("The general rule of law is, that a proviso carves special exceptions only out of the body of the act; and those who set up any such exception must establish it. . . . The rule applied to construction is applied equally to burden of proof in a case like this.") (internal quotation marks and citations omitted). Defendants have failed to carry their burden.[7]

### 1. *Defendants Provide No Evidence of Actual Delivery*

Though Defendants bear the burden to prove that their financed transactions resulted in actual delivery within 28 days, Defendants proffer no evidence that they qualify for the exception prior to April 17, 2013. It is undisputed that for their transactions from July 16, 2011 through April 16, 2013, Defendants offer only an analysis of when Worth sent an allocation request to the depository, not when the depository allocated precious metals to the customer. *See* DSF ¶¶ 30 ("When an allocation was completed, the SQL database assigned an allocation date,

---

[6] As discussed in Section III, B, 3, below, Defendants admit that they allocated metal after 28 days for 326 transactions. Therefore, at a minimum, it is undisputed that Defendants have not established the exception for these transactions, and do not proffer evidence that the remaining transaction entered into prior to April 16, 2013 are excepted.

[7] Consistent with this point, Defendants raise the actual delivery exception as an affirmative defense. *See, e.g.*, DE 82 at 21. A person raising an affirmative defense has the burden of proof on that defense. *In re Rawson Food Service, Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988).

which represented <u>the date upon which the allocation request was communicated to the depository</u>."); 31 ("Using data from Worth's SQL database, NERA matched up metal purchases with subsequent <u>allocation requests</u> for those metals."); 32 ("In instances in which a customer transaction did not match with an <u>allocation request</u> . . . .") (emphasis added). Whether Worth requested allocation within 28 days is an irrelevant straw man; the question at issue is whether actual delivery resulted within 28 days, and Defendants provide no analysis to answer that question.

Furthermore, there is no genuine issue of material fact that when Worth requested a depository to allocate, and when the depository subsequently allocated to a customer, were two separate steps that could and did take place on separate days. The report of Defendants' summary witness, Matthew Evans, included a chart documenting the dates of the customer transactions, Worth's allocation requests, and Diamond State Depository's ("DSD's") allocations for April 25 through September 12, 2013. That chart showed that the date of the allocation request differed from the date of the allocation for 87% of the transactions. Pl.'s MSJ at 12. The Commission's own review of Worth's and the depository's records confirms that there is almost always a delay of several days between the allocation request and the allocation. *Id.* Thus, Defendants' analysis of when Worth sent allocation requests to the depository is irrelevant to the question of when delivery resulted.

### 2. *The Commission Provides Accurate Evidence of Defendants' Failure to Timely Deliver*

Though the Commission does not bear the burden of proof, the Commission reviewed Defendants' financed transactions from July 18, 2011 through December 31, 2012 ("Transactional Review") and found that Defendants failed to deliver within 28 days for 1,547 transactions. Pl.'s MSJ at 14. Unlike Defendants, the Commission used the depository's records to determine when the depository allocated metals to customers. *Id.* As admitted by Defendants' summary witness, use of depository records is critical to answering the question of delivery:

> By matching a Worth customer purchase with a subsequent depository transfer record for that customer, metal and amount, we can identify two things. First, we can identify that the metal represented as allocated in Worth's own records was, in fact, transferred to the customer's account at the depository. Second, we can identify the date when that transfer was effectuated by the depository. <u>With that date of transfer identified from the independent records of the depository, we</u>

9

> can determine if the transfer took place within 28 days of the initial customer purchase transaction.

*Id.* at 3.  The Commission offers the only analysis of when the customer receives the allocation of metal, while Defendants offer an irrelevant analysis of allocation requests.

Defendants, failing to carry their burden of providing an analysis of delivery, instead raise meritless issues against the Commission's Transactional Review.  Defs.' MSJ at 12-13; *see generally* Defendants' Motion to Exclude Melissa Glasbrenner's Summary Exhibit ("Motion to Exclude") (DE 145).  The Commission refutes these issues completely in its Opposition to the Motion to Exclude, but the Commission will summarize those issues here.

Defendants take issue with the Commission's use of a "first in, first out" ("FIFO") methodology, which pairs a customer's earliest purchase with the depository's earliest allocation to that customer.  Defs.' MSJ at 13.  The Commission used this methodology because it was the one under the Generally Approved Accounting Principles ("GAAP") that gave Defendants the greatest benefit of time to make delivery, and because Defendants' former counsel represented that Worth made delivery for all of its transactions.  Pl.'s Opp'n Mot. Exclude at 6.  Defendants now try to reverse course, making the bizarre claim that: (1) for certain transactions, Defendants failed to make delivery at all; (2) the Commission should have assumed that Defendants failed to make delivery for those transactions, which is tantamount to an assumption that Defendants engaged in outright fraud; (3) instead of assuming that Defendants would take a customer's money and deliver nothing in return, the Commission incorrectly gave Defendants the benefit of the doubt and assumed that Defendants would try to make delivery for all of its customer purchases; (4) by giving Defendants the benefit of the doubt and using FIFO, the Commission mistakenly matched an allocation to a purchase where Defendants failed to make delivery at all, when the allocation should have been paired with a more "obvious" purchase.  *Id.*  Defendants' argument is essentially an admission that their allocation process was fundamentally flawed.  Moreover, their alternative methodology, the so-called "obvious pairing" methodology, is not recognized under GAAP and is impermissibly subjective.  Pl.'s Opp'n Mot. Exclude at 7.  Finally, if Defendants believe that the obvious pairing methodology is superior, they have the burden of providing an analysis that utilizes such a methodology.  They failed to do so.

Defendants also complain that the Transactional Review was conducted on a manual basis, Defs.' MSJ at 12-13, but their own summary witness admitted that there was no way to conduct an automated or algorithmic review for the given timeframe. Pl.'s Opp'n Mot. Exclude

at 5. Defendants claim that the Commission used inconsistent formulas, but those formulas were specifically tailored to the data provided by Defendants and the depository, and those formulas are accurate. *Id.* at 5-6.

Defendants claim that the Commission committed certain "executional flaws" in the Transactional Review, but those flaws were based on Defendants' own representations to the Commission and errors in their allocation process. Moreover, even crediting Defendants' arguments, the result is that Defendants failed to timely deliver for 1,472 transactions, which represents an accuracy rate of over 95% for the original result set, and 100% for the adjusted set.

Most importantly, in this Circuit, a summary is admissible if: (1) the underlying documents are admissible, *Peat, Inc. v. Vanguard Research Inc.*, 378 F.3d 1154, 1160 (11th Cir. 2004); and (2) the underlying documents are made available to the other parties, *Nichols v. Upjohn Co.*, 610 F.3d 293, 294 (11th Cir. 1980) ("We find no error in the admission of Dr. Stubbs' testimony. Federal Rule of Evidence 1006 allows courts to admit summaries of voluminous documents provided the documents themselves are made available to other parties."). *See also United States v. Gorel*, 622 F.2d 100, 106 (5th Cir. 1979) ("Federal Rules of Evidence permit admission of summaries of recordings when the original or copies are made available to the other party."). There is no question that the underlying documents are admissible business records of Worth and the depository, Fed. R. Evid. 803(6), and that the underlying documents were made available to Defendants. Defendants' claim that the Transactional Review is inadmissible flies in the face of clear and controlling case law.

### 3. *Defendants Admit that They Failed to Timely Allocate*

Defendants admit that the failed to timely allocate for 326 transactions. Defs.' MSJ at 11. This admission serves as a complete basis to grant summary judgment for liability against Defendants. Furthermore, the number of transactions where Defendants admit liability is from their analysis of allocation requests; the number does not relate to when allocations to the customer took place. Pl.'s MSJ at 15. Defendants fail to offer any analysis of when such allocations occurred, which is at the heart of the actual delivery exception of Section 2(c)(2)(D)(ii)(III)(aa) of the Act.

### 4. *There Is No Scienter Requirement*

Defendants' claim that they "never purposefully" delivered late (or failed to deliver at all), Defs.' MSJ at 11, is simply not relevant. The plain language of Section 4(a) of the Act does

not contain any scienter requirement, and the courts have held that there is no such requirement. *CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 773 (9th Cir. 1995); *CFTC v. Sterling Trading Group, Inc.*, 605 F. Supp. 2d 1245, 1356 (S.D. Fla. 2009).  Like their analysis of allocation requests, Defendants' argument regarding their state of mind is irrelevant.

### C. The Commission is Entitled to Summary Judgment on Count Four, Violation of Section 4d of the Act

Defendants generally assert, without providing any supporting authority, that "issues of materiality" regarding the number of late transactions support entry of judgment in their favor on Count IV.  Defs.' MSJ at 11.  Section 4d of the Act, 7 U.S.C. § 6d, requires a futures commission merchant ("FCM") to register with the Commission.  An FCM is defined, *inter alia*, as a person or entity that engages in soliciting or accepting orders for retail commodity transactions under Section 2(c)(2)(D)(i) of the Act, or who acts as a counterparty in such transactions; and who also accepts money to margin, guarantee, or secure such transactions.  7 U.S.C. § 1a(28)(A)(i).  Here, Worth accepts orders for retail commodity transactions, and Worth is a counterparty to such transactions.  Worth also accepts down payments in connection with such transactions.  Finally, Worth is not registered as an FCM.  Thus, there is no dispute that Worth violated Section 4d of the Act.  Pl.'s MSJ at 16.

### D. There Are Genuine Issues of Material Fact Regarding Defendants' Fraudulent Misrepresentations to Financed Customers in Violation of Section 4b of the Act.

Defendants admit that, at least prior to January 2013, they misrepresented to financed customers through their Agreement that they were entering into legal transactions, whereby Worth would deliver the entire amount of the metals purchased to a depository "within at most 28 days of the date of purchase . . . [and that] [a]s a result . . . [the transactions] are not regulated by the Commodity Futures Trading Commission or the National Futures Association."  Defs.' MSJ at 5-6; DSF ¶¶ 22-23, 25 (asserting that by January 2013 "Worth's record of timely allocation is perfect").  Defendants, however, contend they are entitled to summary judgment on Count III of the CFTC's Complaint, which alleges a violation of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6(a)(2)(A)-(C), because the misrepresentations in the Agreement were neither material to financed customers nor made with scienter.  Defs.' MSJ at 7-9.[8]  As set forth in detail

---

[8] As Defendants recognize, to prove a violation of Section 4b(a)(2)(A)-(C) of the Act, the CFTC must show that Defendants: (1) made a misrepresentation, misleading statement, or omission; (2)

12

below, the Defendants' position is without merit.

### 1. *Materiality Incontrovertibly Exists*

A statement is material if "there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest." *R&W Technical Serv. Ltd. v. CFTC,* 205 F.3d 165, 169 (5th Cir. 2000). In their Motion, Defendants argue that no reasonable investor would consider Worth's misrepresentations material because, from the customer's perspective, there is no difference between a retail commodity transaction "delivered in 28 days . . . or 50 days," so long as the customers receive their metal at some point. Defs.' MSJ at 6. This is nonsense. The time-period within which Worth delivered financed metals to its customers was material because it was the difference between a legal and an *illegal* transaction. Defendants even concede in their Motion that Worth's failure to deliver metals to its financed customers within 28 days of the transaction meant that the transaction was an illegal off-exchange transaction in violation of the Act. *See* Defs.' MSJ at 6. Nonetheless, Defendants offer no basis for this Court to conclude that a reasonable investor would not care whether the investment they are considering is illegal under federal law. Misrepresentations regarding "the nature of the organization handling [an] account, the people [dealt] with, and the type of trading [the] funds were used for" are material under the Act. *Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 110 (2d Cir. 1986) (quoting *Psimenos v. E.F. Hutton & Co. Inc.*, 722 F.2d 1041, 1043-44, n.5 (2d Cir. 1983)).

Defendants contend that a reasonable investor would not consider Worth's failure to timely deliver material because "no customer lost money or was exposed to any additional risk as a result of a delivery delay." Defs.' MSJ at 5. This is irrelevant as customer harm is not a required element of materiality. It is also not true. Worth's misrepresentations to its customers caused financed customers to believe they had purchased and received physical metals within 28 days when they had not. SMF ¶¶ 23-24. *See In re Commodities Int'l Corp.*, [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,943, at 44,563-64 (CFTC Jan. 14, 1997) (finding that any fact that enables customers to assess independently the risk inherent in their investment and the likelihood of profit is a material fact).

---

with scienter; and (3) that the misrepresentation, statement or omission was material. *R.J. Fitzgerald.*, 310 F.3d at 1328.

Next, Defendants assert, without citing to any supporting authority, that this Court should enter judgment in their favor because there is no evidence that the illegal off-exchange transactions actually posed any greater risk than those where Worth allocated within 28 days. Defs.' MSJ at 7. Again, Defendants mischaracterize both the standard for materiality and the facts of this case. Specifically, Defendants ignore the fact that had Worth filed for bankruptcy, its financed customers who did not receive delivery of their precious metals, and whose identities were unknown to Worth's counterparties, would have been left with nothing and forced to stand in line as a general creditor of Worth. CFTC Response to DSF ¶ 24. That this counterparty risk did not materialize is not relevant to the materiality analysis. Materiality is not determined by hindsight. *See Gannio v. Citizens Utils. Co.,* 228 F.3d 154, 165 (2d Cir. 2000) (in a case asserting violations of § 10(b) of the Exchange Act and the corresponding Rule 10b–5, stating that "materiality is determined in light of the circumstances existing at the time the alleged misstatement occurred"); *Pommer v. Medtest Corp.*, 961 F.2d 620, 625 (7th Cir. 1992) (for purposes of determining whether there has been a violation of § 10(b) of the Exchange Act "materiality[ ] must be assessed at the time the statements are made, and not in the light of hindsight").

Besides being illegal and exposing its customers to counterparty risk, Worth's late financed transactions were not conducted on an exchange, like they should have been, and consequently failed to have any of the protections afforded to exchange-traded transactions resulting in delivery outside of 28 days under Sections 2(c)(2)(D) and 4(a) of the Act. These protections include: (1) transparent trade execution and centralized clearing mechanisms, as described above; (2) registration processes to ensure that persons with criminal histories and regulatory bars cannot be principals of the firms offering such transactions; (3) periodic examinations by regulators; (4) minimum financial requirements for FCMs offering such transactions; (5) segregation of customer funds requirements; (6) specific record keeping requirements; and (7) standards for the content and preparation of promotional materials used to solicit customers. CFTC Response to DSF ¶ 24. The Defendants' claim that there is no material difference between a timely and a late delivered financed transaction is, therefore, undisputedly false.

### 2. Defendants Concealed Worth's Failure to Deliver Financed Metals Transactions Within 28 Days.

The record before this Court establishes that Defendants backdated Commodity Customer Transfer Notices to suggest that the transactions qualified for the "28-day exception" when they did not. SMF ¶ 24. While not required to establish materiality, Defendants' concealment of these late transactions suggest that even Defendants themselves recognized the significance of the 28-day delivery period. If Wilshire and Mildner did not think the 28 day time-period for delivery was relevant, they would not have attempted to hide the actual delivery period from investors. At all times relevant to the CFTC's Complaint, the volume of illegal off-exchange business conducted by Worth reached into the millions of dollars, and on various dates between July 18, 2011 and December 31, 2012, Worth failed to make delivery within 28 days for at least 1,472 financed transactions. SMF ¶¶ 37, 40-41. At a minimum, the record before this Court establishes a question of fact as to whether or not Defendants' misrepresentations in the Agreement that financed customers' metal would be delivered "within at most 28 days" and the transactions are therefore "not regulated by the Commodity Futures Trading Commission or the National Futures Association" were material.

### 3. Defendants' "Actual Knowledge" of Their Delivery Delays Establishes Scienter

Defendants argue that they are entitled to summary judgment because there is no evidence that they acted with scienter. Defs.' MSJ. at 7. Scienter is established by an intent to deceive or conduct that "represents an extreme departure from the standards of ordinary care." *R.J. Fitzgerald*, 310 F.3d at 1328. Defendants recognize but do not directly address this standard. Defs.' MSJ at 7. Instead, Defendants ask this Court to find as a matter of law that they acted without scienter on account of their "good faith effort" to comply with Dodd Frank by implementing a system purportedly designed to timely deliver metals. *Id*. Defendants' conduct, however, belies a finding of good faith. Defendants not only knew that they were failing to allocate within 28 days but, actively concealed this fact from customers. SMF ¶ 24.

Defendants mistakenly assert that, in order to avoid summary judgment, the CFTC must prove "either that the system of allocation and delivery [Worth] established . . . after Dodd-Frank was never intended to accomplish timely delivery" or that Defendants' system "presented a danger of delivery which was either known to Defendants, or so obvious that they must have been aware of it." Defs.' MSJ at 8. This mischaracterizes the burden of proof at this stage of the proceedings. More importantly, Worth did in fact fail to allocate metal within 28 days on at least

15

1,472 occasions. SMF ¶¶ 37, 40-41. Defendants' claim that they <u>delivered</u> on time for 94.6% of transactions (Defs.' MSJ at 8) is demonstrably false, where, here, Defendants admit that they examined only when Worth <u>requested allocation</u> from the depository, not when the depository actually allocated metal to the customer. Part IV, *supra*.[9]

Defendants nevertheless assert that summary judgment is warranted and in support cite *Mathews v. Centex Telemanagement, Inc.*, No. C-92-1837-CAL, 1994 WL 269734, at * 6 (N.D. Cal. June 8, 1994) (quoting *Marx v. Computer Sciences Corp.*, 507 F.2d 485 (9th Cir. 1974)). The plaintiff in *Marx* alleged that defendant's earnings forecast violated the requirements of Section 10(b) of the Exchange Act and Rule 10b-5, in that it was both untrue and omitted material facts required to make it not misleading. 507 F.2d at 487. On appeal, the Ninth Circuit reversed summary judgment entered in favor of the defendant and found that both predictions and statements of opinions could be actionable misstatements if the defendants did not have a reasonable basis to believe that the statements were true when made. *Id.* at 485. Here, Defendants continued to enter into Agreements after September 2011, when Defendants learned that deliveries had not been made within 28 days and even forged documents to hide that fact. SMF ¶¶ 23-24. At a minimum, Defendants cannot credibly claim that they believed delivery would be made within 28 days in all instances. Defendants' "actual knowledge" of their failure to allocate within 28 days not only precludes granting summary judgment in Defendants' favor as to scienter, it instead supports granting summary judgment in favor of the CFTC on that issue. *See, e.g.*, *In re Software Tool Works*, 50 F.3d 615, 626-28 (9th Cir. 1994) (evidence that defendants "had access to all information that was available and deliberately chose to conceal the truth" was sufficient to defeat summary judgment on scienter). Defendants have failed to

---

[9] Defendants admit that their allocation process was deeply flawed. In their Motion to Exclude, Defendants admit that: (1) their system did not explicitly tie a customer transaction to an allocation at the depository; (2) they delivered to wrong customer accounts; and (3) they failed to deliver any metal at all for certain transactions. Mot. Exclude at 4, 9-13. Even their own summary witness found that, because of Worth's flawed process, he could not figure out a way to track allocations to customer purchases prior to April 17, 2013. *See* Opp'n Mot. Exclude at 5. Simply put, Defendants had no way of tracking whether allocations occurred within 28 days, and allocations in fact occurred outside of 28 days on numerous occasions. Defendants could not have relied in good faith on their flawed system. Likewise, Defendants' claim that their late deliveries were isolated, Defs.' MSJ at 8, are directly contradicted by their admissions and the fact that they delivered late for at least 1,472 transactions.

demonstrate that there is no genuine issue that they lacked the requisite scienter when they concealed the conduct at issue and their request for summary judgment in their favor must fail.

### 4. Even if Defendants' Actual Knowledge is Ignored, the Commission Need Only Show that Defendants Acted Recklessly

Defendants would still be liable under Section 4b of the Act even if they subjectively believed that they would deliver transactions within 28 days after they had failed to do so on multiple occasions. The CFTC only has to prove Worth acted recklessly to establish a violation of Section 4b of the Act. *R.J. Fitzgerald*, 310 F.3d at 1330; *see also Woods v. Barnett Bank of Ft. Lauderdale,* 765 F.2d 1004, 1010 (11th Cir. 1985); *White v. Sanders,* 689 F.2d 1366, 1367 n.4 (11th Cir. 1982). Under Section 4b of the Act, it is well-settled that scienter can be established by either knowing or reckless conduct on the part of Defendants. A showing of "knowing misconduct" or "severe recklessness" satisfies the scienter requirements in a securities fraud action. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1282 (11th Cir. 1999) (vacating denial of motion to dismiss civil action alleging violation of § 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5). Scienter is not a matter of subjective belief as to the reality of one's actions but, rather, it is a matter of "<u>awareness of underlying facts</u>." *SEC v. Falstaff Brewing Corp*., 629 F.2d 62, 77 (D.C. Cir. 1980) (emphasis added).

As explained above, Defendants, at a minimum, recklessly relied on a flawed allocation system that did not track allocations and frequently resulted in late allocations. Defendants conveniently attempt to portray themselves as executives acting in good faith who faced logistical delays outside of their control, but their own admissions, the findings of their summary witness, and the uncontroverted facts disprove that notion. Finally, concealing the adverse truth in order to allegedly protect customers from a fraud is not a valid defense to speaking falsely. Defendants' position, if embraced, would eviscerate the salutary goals of the federal commodities laws.

## IV. CONCLUSION

The record before this Court establishes that Defendants fraudulently misrepresented that fully-paid customers received actual physical metal, when in fact Worth neither delivered nor acquired title to any physical metal but instead covered its obligations with unallocated positions. The record also shows that Defendants engaged in illegal off-exchange financed transactions, as it does not include <u>any</u> evidence from Worth that its transactions prior to April 17, 2013 resulted in actual delivery within 28 days. Further, the record also includes evidence that Worth

misrepresented that financed transactions were legal and that Worth delivered within at most 28 days, and that Worth did not register as a futures commission merchant. Accordingly, for the reasons set forth above and in the Commission's Motion for Partial Summary Judgment, the Commission respectfully requests that this Court deny Defendants' Motion in its entirety and enter judgment as a matter of law in favor of the CFTC on Counts I, II and IV of the Complaint.

Date: May 11, 2015                                   Respectfully submitted,

                                                     U.S. Commodity Futures Trading Commission

                                                     */s/ Elizabeth N. Pendleton*

                                                     Elizabeth N. Pendleton (ependleton@cftc.gov)
                                                     Bar ID # A5501930
                                                     David Chu (dchu@cftc.gov)
                                                     Bar ID # A5501901
                                                     Brigitte Weyls (bweyls@cftc.gov)
                                                     Bar ID # A5501826
                                                     Rosemary Hollinger
                                                     Bar ID # 5500849

                                                     U.S. Commodity Futures Trading Commission
                                                     525 West Monroe Street, Ste. 1100
                                                     Chicago, IL  60661
                                                     Ph:  (312) 596-0700
                                                     Fax: (312) 596-0714

## CERTIFICATE OF SERVICE

The undersigned, an attorney with the Commodity Futures Trading Commission, does hereby certify that on May 11, 2015 she caused a true and accurate copy of the foregoing:

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

to be served on Defendants VIA U.P.S. in the manner shown below:

*Defendants Worth Group, Inc., Andrew Wilshire and Eugenia Mildner*

*Defendants Andrew Wilshire and Eugenia Mildner*

**Edward Alan Marod**
Gunster Yoakley & Stewart, P.A.
777 S. Flagler Drive
Suite 500 E
West Palm Beach, FL 33401
*emarod@gunster.com*

**John Daniel Couriel**
Kobre & Kim, LLP
2 South Biscayne Boulevard
35th Floor
Miami, FL 33131
*john.couriel@kobrekim.com*

**Gerald Joseph Curley, Jr.**
Gunster Yoakley & Stewart, P.A.
777 S. Flagler Drive
Suite 500 E
West Palm Beach, FL 33401
*jcurley@gunster.com*

**Matthew I. Menchel**
Kobre & Kim, LLP
2 South Biscayne Boulevard
35th Floor
Miami, FL 33131
*matthew.menchel@kobrekim.com*

**Nathan Hill**
Gunster Yoakley & Stewart, P.A.
777 S. Flagler Drive
Suite 500 E
West Palm Beach, FL 33401
*nhill@gunster.com*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*/s/ Elizabeth N. Pendleton*
One of the Attorneys for Plaintiff
525 W. Monroe St., Ste. 1100
Chicago, IL 60661
(312) 596-0629
(312) 596-0714 (fax)
*ependleton@cftc.gov*